UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JAMES RILEY WOLDSETH,

       Petitioner,

v.                                   Case No.  8:10-cv-1631-T-33MAP

SECRETARY, DEPARTMENT OF CORRECTIONS,

       Respondent.

_____

## ORDER

THIS CAUSE is before the Court on Petitioner Woldseth's timely-filed 28 U.S.C. § 2254 petition for writ of habeas corpus. (Doc. 1).  Woldseth challenges his convictions and sentences entered by the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida. A review of the record demonstrates that the petition must be **denied.**

## PROCEDURAL HISTORY

On January 8, 2002, Woldseth was charged by Information with three counts of Money Laundering and four counts of Grand Theft. (Exhibit 1). On June 2, 2003, Woldseth entered a plea of guilty to all seven charges. (Exhibit 2: Plea Form). Woldseth was represented by Bjorn E. Brunvand, Esquire. Mr. Brunvand filed a motion for downward departure. (Exhibit 3). On June 2, 2003, a departure sentencing hearing was held. (Exhibit 4). After hearing the testimony of several witnesses and argument of counsel, the state trial

court imposed the following sentence: twenty years incarceration on counts one, five, six, and seven; eighty months incarceration on counts two and four; and fifteen years incarceration on count three. All sentences are concurrent. (Exhibit 5: Judgment and Sentence).  Woldseth did not timely pursue an appeal of his judgment and sentence.

## Motion for Reconsideration of Sentence

A review of the state circuit court docket shows that on July 3, 2003, through his attorney Mr. Brunvand, Woldseth filed a motion for reconsideration of sentence pursuant to Fla. R. Crim. P. 3.800(c). (Exhibit 6: Circuit Court Docket at p. 4; Exhibit 52). Before the state trial court ruled on the petition, Woldseth retained new substitute counsel, DeeAnn D. Athan, Esquire, of Escobar, Ramirez & Associates, to represent him. (Exhibit 5 at p.5). A hearing on the motion was held on November 3, 2003.  On November 10, 2003, the state trial court denied the motion for reconsideration.

## Petition for Belated Appeal

On June 14, 2005, pursuant to Fla. R. App. P. 9.141(c), Woldseth filed a pro se petition for writ of habeas corpus (belated direct appeal) in the state district court of appeal. (Exhibit 7). Woldseth claimed he had asked Mr. Brunvand to file a notice of appeal but counsel failed to do so. The State filed a response in opposition, accompanied by Mr. Brunvand's affidavit. (Exhibit 8). On October 20, 2005, in Case No. 2D05-3743, the state district court of appeal directed the state trial court to appoint a commissioner to hold a hearing on the petition for belated appeal. (Exhibit 9). The hearing was held December 9, 2005, before the Honorable W. Douglas Baird, Circuit Judge, acting as commissioner. (Exhibit 10: Transcript of Hearing). On December 14, 2005, Judge Baird filed the commissioner's report, recommending that the petition for belated appeal be denied.

2

(Exhibit 11). On January 5, 2006, the state district court of appeal denied Woldseth's petition for belated appeal. (Exhibit 12). *Woldseth v. State*, 926 So. 2d 1286 (Fla. 2d DCA 2006)(table). On January 19, 2006, Woldseth filed a motion to recall opinion, withhold issuance of mandate, and enlarge time period for filing a motion for rehearing. (Exhibit 13). On February 1, 2006, the state district court of appeal denied the motions. (Exhibit 14). Woldseth then filed a motion for rehearing of the court's February 1, 2006 order. (Exhibit 15). The state district court of appeal denied the motion for rehearing on March 30, 2006. (Exhibit 16).

### Rule 3.850 Motion for Postconviction Relief

On July 2, 2004, Woldseth, through retained counsel, Elizabeth Beardsley, Esquire, filed a Rule 3.850 motion for postconviction relief in the state trial court, raising four grounds for relief: (1) defense counsel was ineffective for failing to investigate pretrial suppression motions; (2) defense counsel was ineffective for failing to properly present mitigating factors and contradict aggravating factors; (3) defense counsel incorrectly advised Woldseth that he would be able to appeal his sentence; and (4) cumulative errors throughout the proceeding caused Woldseth's plea to be involuntary. On April 26, 2004, Ms. Beardsley, filed an amended Rule 3.850 motion raising the same claims as in the original motion. (Exhibit 18). On May 26, 2005, the state trial court summarily denied grounds 2, 3, and 4, and dismissed ground 1 without prejudice to Woldseth's filing a facially sufficient claim. (Exhibit 19).

In June 2005, Woldseth, pro se, filed a motion for rehearing and motion for leave to amend, followed by two amended motions for rehearing and a motion for leave to amend. (Consolidated Exhibit 20). On July 1, 2005, the state trial court granted the motion for

rehearing, denied the motion for leave to amend, and directed the State to show cause why Woldseth was not entitled to a hearing on ground 1. (Exhibit 21). On July 27, 2005, the state trial court granted retained counsel's motion to withdraw. (Exhibit 22). The State filed its response to the order to show cause on August 1, 2005. (Exhibit 23). On September 8, 2005, the state trial court denied Woldseth's motion for rehearing of the order denying the motion to amend. In that order, the state trial court granted an evidentiary hearing on ground 1 of the motion. (Exhibit 24).

The evidentiary hearing was held March 13, 2006. (Exhibit 25). Woldseth was represented at the hearing by George Tragos, Esquire. Woldseth presented five witnesses, including former trial counsel, Mr. Brunvand.  On April 11, 2006, the state trial court denied Woldseth's motion for postconviction relief. (Exhibit 26). Woldseth appealed the adverse rulings. Assistant Public Defender Robert D. Rose, who was appointed to represent Woldseth in the postconviction appeal, filed an initial brief (Exhibit 27) raising two issues: 1) the lower court erroneously dismissed two timely-filed claims of ineffective assistance of counsel; 2) trial counsel's failure to file a motion to suppress appellant's confession constituted ineffective assistance of counsel.

On October 19, 2007, in Case No. 2D06-2347, the state district court of appeal, in a written opinion, affirmed the state trial court's denial of grounds 1-4 of the original Rule 3.850 motion; however, the state district court of appeal stated that the state trial court should have allowed Woldseth to amend his motion to include two additional claims.[1]

---

[1] The amended claims were: (1) Woldseth's plea was involuntarily entered because he was misadvised by trial counsel that, if he entered into a plea, his trial attorney would "guarantee" him a downward departure sentence with no prison term; and (2) trial counsel was ineffective in negotiating a plea deal with the victim in this case rather than pursuing

(Exhibit 30). *Woldseth v. State*, 974 So. 2d 423 (Fla. 2d DCA 2007). The mandate issued November 9, 2007. (Exhibit 31).

### On Remand

On remand, the state trial court held an evidentiary hearing on June 23, 2008. (Exhibit 37: Hearing Transcript). Woldseth presented a motion to conduct discovery and motion for appointment of counsel, and the court denied both motions. Woldseth asked for the opportunity to retain counsel, and the court denied his request, inasmuch as Woldseth had been aware the court would not appoint counsel since March 11, 2008, and Woldseth had made no effort to obtain counsel. (Exhibit 37 at pp. 8-9, 12). The court advised that the hearing would proceed, and in order to carry his burden to move forward, Woldseth would need to testify himself or to call witnesses. Id. at p. 9. It was noted for the record that both former trial counsel, Mr. Brunvand, and the victim's attorney, Mr. Olney, were present and available to testify. Id. at p. 14. Woldseth stated he could not proceed without an attorney, and the following exchange occurred:

THE COURT:      You're basically defaulting on your motion by not moving forward with any testimony or evidence; do you understand?

DEFENDANT:      If you call it a default.

THE COURT:      I'm sorry?

DEFENDANT:      If that's what you call it, but I cannot proceed on my own. I'm not an attorney.

---

plea negotiations with the State.

| THE COURT: | Do you want to put anything on the record? He's not calling anybody. State, do you want to put anything on the record as far as testimony? |
|---|---|
| MR. KRAEBEL: | No, Your Honor. The burden is on him, and the State doesn't see any reason to put on testimony if he doesn't meet his burden. |

(Exhibit 37 at p. 14). The state trial court later told Woldseth that if chose not to testify or

put one of the witnesses on the stand, the court would deny the Rule 3.850 motion due to

Woldseth's failure to carry his burden of proof. Woldseth replied that he could not proceed,

and the two amended claims were denied. Id. at p. 16. On July 7, 2008, the state trial court

denied the motion for postconviction relief. (Exhibit 38). On July 10, 2008, Woldseth filed

a motion for rehearing (Exhibit 39), which the state trial court denied on July 11, 2008.

(Exhibit 40). Woldseth appealed, and on December 9, 2009, in Case No. 2D08-3820, the

district court of appeal per curiam affirmed the state trial court's denial of the amended Rule

3.850 claims for postconviction relief. (Exhibit 44). *Woldseth v. State*, 27 So. 3d 36 (Fla.

2009)(table). After a motion for rehearing was denied, the mandate issued March 1, 2010.

(Exhibit 46).

### Rule 3.800(a) Motion to Correct an Illegal Sentence

On February 10, 2010, prior to finality of the Rule 3.850 proceeding, Woldseth filed

a Rule 3.800(a) pro se motion to correct an illegal sentence. (Exhibit 47). On March 4,

2010, the state trial court denied the motion.  (Exhibit 48). Woldseth appealed. On July 7,

2010, in Case No. 2D10-1454, the state district court of appeal per curiam affirmed the trial

court's denial of the motion to correct illegal sentence. (Exhibit 50). *Woldseth v. State*, 2010

WL 2707611 (Fla. 2d DCA, Jul. 7, 2010)(table). The mandate issued August 3, 2010.

(Exhibit 51).

Woldseth provided the present petition to prison officials for mailing on July 21, 2010.  Woldseth raises four ground for relief in this federal petition.

## STANDARD OF REVIEW

Woldseth's petition is governed by the provisions of  28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v. Garceau*, 538 U.S. 202 (2003); *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Under AEDPA, this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

## DISCUSSION

## GROUND ONE

PETITIONER'S RIGHTS TO DUE PROCESS OF LAW GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND TO THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED BY TRIAL COUNSEL'S FAILURE TO TIMELY FILE FOR DIRECT REVIEW OF THE STATE CRIMINAL CONVICTION.

Woldseth alleges he was denied his constitutional due process rights, and denied

effective assistance of counsel where trial counsel failed to timely file for direct review of the conviction. Woldseth properly raised this issue in a Fla. R. App. P. 9.141(c) petition for belated appeal in the state district court of appeal. However, the petition was denied following an evidentiary hearing which was held in the state trial court at the direction of the state district court of appeal. During the hearing before the commissioner, Woldseth stated in his opening remarks that he consulted with Mr. Brunvand after sentencing, and they discussed the options open to Woldseth. He said he and his attorney discussed reconsideration of sentence, direct appeal, and postconviction relief. (Exhibit 10 at pp. 13-14). Woldseth commented that it appeared from his sworn affidavit that Mr. Brunvand was not refuting that Woldseth asked him to file an appeal, and that Mr. Brunvand agreed to file the appeal. Id. at p. 14. Woldseth admitted the truth of Mr. Brunvand's statement in the affidavit that "We both agreed that a better approach was to file a motion to reconsider sentence, . . ." Id. at p. 15. Woldseth testified at the belated appeal hearing:

> And also in agreeing that a better approach was to file a motion to reconsider sentence. Yeah, we were doing that, and maybe that's a better thing, but I wanted to do both. And I believe I made it very clear to Mr. Brunvand that, you know, that that's what I wanted done. And I found out a few months later -- I did get another attorney. Mr. Brunvand did file the motion for reconsideration of sentence and between that time and the hearing I hired another attorney to represent me at that. . .

Exhibit 10 at p. 15. On cross-examination, Woldseth stated that he told his Mr. Brunvand he wanted to file an appeal as well as a motion for reconsideration of sentence, and that Mr. Brunvand specifically told Woldseth he would file the appeal for him. Id. at p. 19. Mr. Brunvand testified at the hearing that he had been an attorney for sixteen years. Id. at p. 20. He met with Woldseth at least once and probably several times at the jail after the sentencing. Id. at p. 21. Mr. Brunvand told Woldseth that while he did not like the sentence,

8

there were no appealable issues as to the sentence. Id. Mr. Brunvand stated further:

> I told him [Woldseth] that it was my belief that the better approach would be to file a motion for reconsideration and I felt like there was a good chance[] that we would prevail in a motion for reconsideration. I believe I may have indicated that we couldn't do both, meaning if we -- if I filed a motion a notice of appeal I couldn't do the motion for reconsideration because it divest[s] the trial court of jurisdiction and that, you know, after the motion for reconsideration was heard, then certainly a notice of appeal could be filed at that point in time.

Mr. Brunvand added, "Although, again, I didn't know that there would be great chances of him prevailing in such an appeal. But that if we got to that point, certainly I would file a notice." Id. at p. 21. Mr. Brunvand stated that he probably would have told Woldseth that as long as he was his attorney he would file the notice of appeal at the appropriate time. Id. at p. 22. Mr. Brunvand testified that soon after he filed the motion for reconsideration, he received notice that "Attorney Escobar" had been retained and took over the case. At that point, Mr. Brunvand said, his obligations ended in the case as far as filing any paperwork. Id. Mr. Brunvand testified that if Woldseth had asked him to file an appeal and he was still Woldseth's attorney, he would have followed through with that request despite his belief that Woldseth really had no appealable issues. He added that if Woldseth had insisted on doing an appeal right away instead of the motion to reconsider, I would have done that. Id. Mr. Brunvand said during the discussion about filing the motion for reconsideration, he believed Woldseth agreed with him that that would be the best route to try first rather than filing the notice of appeal at that time. Id. at pp. 22-23. Mr. Brunvand said if Woldseth had not agreed, then he would have done what his client asked him to do. Id. at p. 23.

During cross-examination by Petitioner Woldseth, Mr. Brunvand reiterated that he

believed the notice of appeal would have to be filed after the reconsideration of sentence hearing. When Woldseth retained another attorney to represent him in the case, prior to the hearing on the sentencing motion. Mr. Brunvand testified that after Woldseth hired a new attorney, he was no longer representing Woldseth, and anything filed after that would be the new attorney's obligation. Id. at pp. 24- 25. The commissioner asked Woldseth when Mr. Brunvand filed the motion for reconsideration, and he responded that is was July 3rd or 4th, 2003. Id. at pp. 26-27. Woldseth also told the court he hired new counsel in September, 2003.  Id. at p. 27.  The hearing on the motion took place on November 3, 2003. The judge/commissioner later filed a written report containing the following findings and recommendations:

> THIS CAUSE came before the court on a recent order issued by the Second District Court of Appeal, dated October 25, 2005, and a subsequent order issued by Chief Judge David A. Demers, dated October 26, 2005, the latter of which appointed the undersigned judge to act as commissioner in order to take testimony and make findings of fact concerning the Defendant-Appellant's Petition for Belated Appeal, filed in the Second District Court of Appeal. In his petition, the Defendant alleges that he told his attorney Bjorn E. Brunvand to file an appeal but he failed to do so.

> On December 9, 2005, this court held an evidentiary hearing on the matter. In the Amended Notice of Hearing on Petition for Belated Appeal and at the evidentiary hearing, this court denied the appointment of counsel for purposes of the hearing. *Graham v. State*,  372 So. 2d 1363 (Fla. 1979); Rowe v. State, 777 So. 2d 1088 (Fla. 2d DCA 2001).

> At the hearing, the Defendant testified that he took an open plea, but did not like his resulting sentence of twenty years Department of Corrections. The Defendant testified that after he was sentenced, he spoke with his attorney and discussed the possibility of filing a notice of appeal and a Motion for Reconsideration. The Defendant testified that he told Mr. Brunvand he wanted to appeal his sentence and Mr. Brunvand told him he would file the notice of appeal. The Defendant agreed that he wanted to file a Motion for Reconsideration, but claims that he still wanted to file an appeal. The Defendant testified that Mr. Brunvand filed his Motion for Reconsideration, but that another attorney argued the motion. The Defendant testified that he

received a copy of the Motion for Reconsideration, but did not contact Mr. Brunvand after he got it.

The Defendant's attorney, Bjorn Brunvand also testified at the hearing. Mr. Brunvand testified that he had several conversations with the Defendant after sentencing because the Defendant was unhappy with his sentence. Mr. Brunvand testified that he too was not happy with the Defendant's sentence. Mr. Brunvand testified that there were no appealable issues and that he and the Defendant agreed the better approach was to file a Motion for reconsideration. Mr. Brunvand testified that he discussed with the Defendant the rationale for filing the Motion for Reconsideration. Mr. Brunvand stated that he believed that in the instant case it was more advantageous to file a Motion for Reconsideration while the trial court still had jurisdiction to consider it. Mr. Brunvand testified that he was noticed that another attorney was retained in the case and he believed he was no longer of counsel. Finally, Mr. Brunvand stated under oath that if the Defendant had insisted that he file a notice of appeal immediately after sentencing he would have done so.

Based on the testimony presented at the hearing, and assessing the credibility of the witnesses, the court finds that the Defendant never requested Mr. Brunvand file a direct appeal after he entered his plea. The court also finds that counsel never told the Defendant that he would file a notice of appeal in this case.

**ORDERED AND ADJUDGED** that this court, acting as commissioner, hereby recommends to the Second District Court of Appeal that the defendant's Petition for Belated Appeal be denied. Please find attached a transcript of the December 9, 2005 hearing.

(Exhibit 11 at pp. 1-2).

The commissioner concluded, based in part on credibility findings, that Woldseth never requested his trial counsel to file a direct appeal after he entered his plea, and that counsel never told Woldseth that he would file a notice of appeal in this case. Moreover, it is clear from all the testimony at the hearing that trial counsel did consult with Woldseth regarding his available options following the convictions and that Woldseth agreed with Mr. Brunvand's suggestion to file a motion for reconsideration of sentence.

The prevailing Supreme Court law addressing the issue before this Court is *Roe v.*

*Flores-Ortega,* 528 U.S. 470 (2000). There, the court held that standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), is to be applied in evaluating a claim that counsel was constitutionally ineffective for failing to file a notice of appeal. With respect to the first prong of *Strickland* - whether counsel's representation fell below an objective standard of reasonableness - the Supreme Court reaffirmed that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega*, 528 U.S. at 477. The court went on to discuss the situation where, as in Woldseth's case, the defendant does not make a specific request or instruction to file a notice of appeal:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. *See supra*, at 1034 and this page. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. That question lies at the heart of this case: Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

*Flores-Ortega*, 528 U.S. at 478.

In Woldseth's case, the state trial court determined, as a matter of fact, that Woldseth never requested Mr. Brunvand file a direct appeal after he entered his plea. Moreover, the testimony at the state hearing clearly shows trial counsel did consult with Woldseth about his various options for pursuing post judgment remedies, including seeking

sentencing relief, which was important to Woldseth. Consequently, Woldseth cannot establish the deficiency prong of *Strickland*.

As to the prejudice prong, the Supreme Court held in *Flores- Ortega* that, "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.

Both Woldseth and Mr. Brunvand testified that Woldseth was primarily concerned with the length of his sentence. Counsel advised Woldseth that the most promising avenue for relief would be a motion for reconsideration of sentence. Woldseth agreed with counsel's suggestion, and Mr. Brunvand filed the motion for reconsideration on July 3, 2003. After a hearing, the trial court denied the motion on November 10, 2003.

This is not a case of trial counsel's failing to file a notice of appeal after a specific request to do so. Rather, Woldseth's case involves an interplay of potential remedies, and there can be no presumption of prejudice for failing to abide by Woldseth's wishes. Woldseth did not say he wanted an appeal in thirty days, but instead agreed to explore a motion to mitigate sentence first, with the obvious understanding that, if the motion was successful, Woldseth would receive earlier release from prison.

The credible testimony at the hearing on the petition for belated appeal supports the commissioner's conclusion that Woldseth never asked counsel to file a notice of appeal. Woldseth has not shown that he would have foregone the motion for reconsideration of sentence or that his desire for direct review was paramount to his seeking sentencing reduction. Woldseth has never averred that under no circumstances would he have pursued a notice of appeal before filing his motion to mitigate the sentence. Woldseth

cannot show that he would have appealed if he had obtained sentencing relief in his motion for reconsideration of his sentence. A prompt request for sentence mitigation facilitates review before memories may fade with the passage of time. Indeed, the testimony of trial counsel reflects he was mindful of the narrowing opening for potential "unraveling" of the sentencing outcome. This is supported by counsel's testimony that he believed pursuit of a motion to mitigate was the best option under the circumstances. Woldseth did not establish that he would have foregone the opportunity to pursue mitigation at that juncture, i.e., "before the concrete set" with issuance of a mandate on direct appeal. Nor did he suggest that the reasons for mitigation would become more palatable after conclusion of direct review.

To the extent Woldseth argues that the filing of a motion for reconsideration of sentence was not a tolling motion and therefore prevented him from filing a timely direct appeal, such argument is unavailing. Trial counsel did not guarantee the availability of direct appeal, nor did counsel affirmatively misadvise Woldseth that the Rule 3.800(c) motion would not foreclose a timely appeal. Trial counsel did not make any promises or offer affirmative advice regarding tolling the time for filing a direct appeal.

In sum, the state trial court, after an evidentiary hearing, found Woldseth never specifically requested his trial attorney, Mr. Brunvand, to file a direct appeal after he entered his guilty plea. The testimony at the evidentiary hearing shows Woldseth knew he could not pursue both a direct appeal and a motion to mitigate, reduce or modify the sentence at the same time. Woldseth opted to seek sentencing reduction and did not request his attorney to file a notice of appeal at that time. Mr. Brunvand testified that had Woldseth insisted on "doing an appeal right away instead of the motion to reconsider," he

would have filed the notice of appeal. (Exhibit 10 at p. 22). Shortly after Mr. Brunvand filed the motion for reconsideration, Woldseth retained new counsel to argue the motion for reconsideration of sentence, and Mr. Brunvand no longer represented Woldseth. Woldseth fails to rebut, by clear and convincing evidence, the presumption of correctness of the commissioner's finding. Therefore, Woldseth cannot demonstrate that counsel's performance was deficient or that he was prejudiced as required by *Strickland*. The state court decision is neither contrary to, nor an unreasonable application of, Supreme Court precedent, nor was the ruling based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### ***Gomez-Diaz v. United States***

*Gomez-Diaz v. United States,* 433 F.3d 788 (11th Cir. 2005) applies in this case. The clearly established United States Supreme Court law relative to ground one provides that if the defendant affirmatively requests of counsel that he file a notice of appeal, counsel's failure to do so is per se ineffective. *Ashcraft v.* Secretary, 2010 WL 883806 (M.D. Fla., Mar. 8, 2010)(citing *Gomez-Diaz*, 433 F.3d at 791-92). *See Roe v. Flores-Ortega*, 528 U.S. 470, 485 (2000) (citing *Rodriquez v. United States*, 395 U.S. 327, 328 (1969)).

### Discussion Relative to *Gomez-Diaz v. United States*

On December 20, 2005, the United States Court of Appeals for the Eleventh Circuit, decided *Gomez-Diaz v. United States*, 433 F.3d 788 (11th Cir. 2005). Gomez-Diaz was convicted of, and sentenced for, federal offenses after entering into a plea agreement that included a sentence appeal waiver. *Id.* at 790. Gomez-Diaz then filed a pro se section 2255 motion alleging that his counsel had failed to file a requested notice of appeal. *Id.*

The district court dismissed the motion to vacate without an evidentiary hearing because Gomez-Diaz had not identified any ground for appeal that fell within any exception to his sentence appeal waiver. *Id.* The Eleventh Circuit vacated and remanded. *Id.* at 793. In doing so, the Eleventh Circuit: (1) read Gomez-Diaz's pleading liberally to allege that he had asked counsel to file an appeal but counsel had recommended filing a section 2255 motion instead, *id.* at 792; (2) concluded that the district court had erred in denying an evidentiary hearing because the pleading was insufficient to indicate whether Gomez-Diaz's expression to counsel of his desire to appeal had triggered counsel's duty to do so or whether counsel had fulfilled his duty to consult with the petitioner to determine his wishes, *id.* at 793; and (3) held that if the evidence established either that counsel had acted contrary to Gomez-Diaz's wishes, or that counsel had failed to fulfill his duty to attempt to determine Gomez-Diaz's wishes, prejudice would be presumed and Gomez-Diaz would be entitled to an out-of-time appeal, "regardless of whether he can identify any arguably meritorious grounds for appeal that would fit one of the exceptions contained in his appeal waiver[,]" *Id.*

### *Woldseth's Case Is Distinguishable from Gomez-Diaz's Case*

In *Roe v. Flores-Ortega,* 528 U.S. 470 (2000), the Supreme Court established a three-step analytical framework to be applied in assessing ineffective assistance of counsel claims predicated upon counsel's failure to file a notice of appeal on the defendant's behalf. Under *Flores-Ortega*, courts first must establish whether a defendant requested that his attorney file a notice of appeal. If such a request were made and disregarded, then counsel acted in a manner that was per se professionally unreasonable. *Id.* at 477. If, however, the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken,

16

courts must then determine whether counsel "consulted" with the defendant about an appeal. In this context, the term "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 488. "If counsel has consulted with the defendant ... then [c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* If, however, counsel fails to consult with the defendant, then "the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* In this final category of cases, the Court "reject[ed] a bright-line rule that counsel must always consult with the defendant regarding an appeal." *Id.* at 480. Rather, the Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.*

The analysis of Woldseth's case under *Flores-Ortega* demonstrates that Woldseth's case is distinguishable from *Gomez-Diaz.* Woldseth was afforded a full evidentiary hearing on this claim after he filed a petition for a belated appeal in the state district court of appeal. The commissioner appointed to preside at that hearing heard testimony (See discussion above.) After the hearing, the commissioner issued an order determining that counsel was not ineffective for failing to file a notice of appeal, and the state district court of appeal denied Woldseth's petition for a belated appeal.

Woldseth is not entitled to a second evidentiary hearing on the issue he raises in

ground one.   Nothing in the commissioner's report demonstrates that the state courts' decision was unreasonable under the AEDPA.

For the reasons stated above, ground one does not warrant habeas corpus relief.

## GROUND TWO

PETITIONER'S FOURTH, FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS GUARANTEED BY THE UNITED STATES CONSTITUTION WERE VIOLATED BY TRIAL COUNSEL'S FAILURE TO MOVE TO SUPPRESS THE CONFESSION MADE IN THIS CASE AS A RESULT OF UNLAWFUL POLICE ACTION.

Woldseth alleges trial counsel was ineffective for failing to file a motion to suppress his confession to police. This claim has no merit.

The allegation in ground two fails to meet the threshold requirements of 28 U.S.C. § 2254(d) and (e). Woldseth is asserting a claim of ineffective assistance of counsel and Woldseth must satisfy the two-pronged inquiry of *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Woldseth must demonstrate that his attorney's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Woldseth must also prove prejudice, in that he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." To establish prejudice caused by counsel's alleged ineffectiveness in the context of the entry of a plea, the petitioner must show that his attorney's

performance was deficient and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Woldseth must prove both prongs of *Strickland*.

Although the state trial court did not cite *Strickland* in its final order denying relief, the court recognized and properly applied the *Strickland* two prong test. The court's well-reasoned, thorough order states in pertinent part:

> In his motion, the Defendant alleges his trial counsel was ineffective in failing to file a motion to suppress the Defendant's police confession. The Defendant claims this confession was subject to suppression because police used the victim as a police agent in eliciting the confession and because they did not properly respond to the Defendant's inquiry regarding his need for an attorney. The Defendant contends that, had counsel filed a motion to suppress in this case, he would not have pled guilty and would have proceeded to trial.

> ### EVIDENTIARY HEARING TESTIMONY

> In total, five witnesses testified at the evidentiary hearing on this motion. First, Robert Coleman, the retired police detective who investigated the Defendant's case, testified at the hearing. Detective Coleman testified that, on November 21, 2001, he spoke with Stuart Arnold, the victim, who told Detective Coleman he planned to meet the Defendant that night at Tucson's Restaurant, a restaurant near Mr. Arnold's office, and that he planned to ask the Defendant to come back to the office with him. Based on this information, Detective Coleman and his partner, Detective Monahan, along with Mr. Arnold's accountant, Susan Hanna, waited in Mr. Arnold's office and were present when the Defendant arrived with Mr. Arnold. Immediately, Detective Coleman advised the Defendant of the charges against him and read him his *Miranda* rights.FN6

>> FN6 Detective Coleman also testified that the Defendant was again advised of his *Miranda* rights at approximately 6:40 p.m., just prior to giving a written confession, and that he waived his *Miranda* rights each time he was advised of them. Detective Coleman further stated that the Defendant read, initialed, and signed a waiver form.

> Detective Coleman further testified that, after the Defendant was taken into custody, he was taken to the police station and questioned by police. Mr.

Arnold and Ms. Hanna were also present during at least some of the questioning. Detective Coleman stated that the Defendant was very direct in admitting his guilt and, admitted to every incident of forgery that the police presented to him. Detective Coleman also noted that the Defendant was in no way confused until several hours into the questioning, when he began to be slightly confused on some questions posed to him. Detective Coleman stated that, due to the openness of the Defendant's responses, he was concerned that the Defendant might be admitting to some incidents where he, in fact, was not guilty, so he asked the Defendant to read every check presented to him carefully and to be sure he had forged it before admitting to doing so. Detective Coleman testified that the Defendant never asked for a lawyer while in police custody and was very remorseful and focused on recovering Mr. Arnold's money. Finally, Detective Coleman testified that at no time during the questioning was anyone permitted to interject, answer for the Defendant, or instruct the Defendant on how to answer the questions posed by Detective Coleman.

Next, Stuart Arnold, the victim in this case, testified at the hearing. Mr. Arnold testified that he spoke with Detective Coleman regarding the Defendant on November 21, 2001, and then contacted the Defendant to ask him to meet Mr. Arnold at Tucson's Restaurant that evening. Mr. Arnold stated that at no time during his discussion with him did Detective Coleman ask Mr. Arnold to arrange the meeting with the Defendant or to bring the Defendant to Mr. Arnold's office. However, Mr. Arnold testified, he simply told Detective Coleman that he planned to do so, and did, in fact, bring the Defendant back to his office that evening. Mr. Arnold stated that, during the time he was present at the Defendant's interrogation, the Defendant never asked for an attorney. Finally, Mr. Arnold also testified that the Defendant was only questioned by police and that he never personally questioned the Defendant in any way.

Third, Susan Hanna, a certified public account who audited Mr. Arnold's accounts and discovered money missing from them, testified that Mr. Arnold instructed police that he was meeting the Defendant at Tucson's and planned to return to his office with him. Ms. Hanna further stated that she was present during much of the police questioning, and that the Defendant never requested an attorney in her presence. Ms. Hanna also testified that she recalled the Defendant being read his *Miranda* rights as soon as he came into Mr. Arnold's office, and also recalled that the Defendant seemed coherent and unconfused at all times. Finally, Ms. Hanna testified that Mr. Arnold never controlled the Defendant's answers to police in her presence, and that the Defendant voluntarily admitted to taking Mr. Arnold's money.

Fourth, Bjorn Brunvand, the Defendant's trial counsel, testified at the hearing. Mr. Brunvand testified that, when he was retained, he reviewed the

discovery in this case and found no indication that the Defendant's police confession was involuntary. Mr. Brunvand further stated that he discussed strategy with the Defendant and discussed the possibility of filing motions in this case, but that the Defendant's ultimate goal in this case was to make restitution to Mr. Arnold and seek a departure sentence. Additionally, Mr. Brunvand testified that he discussed the likelihood of success if the case was litigated, including the incriminating evidence that existed against the Defendant apart from his confession, and discussed the option of filing a motion to suppress the Defendant's confession. Mr. Brunvand added that, given the fact that the Defendant was out on a low bond and already making restitution payments to Mr. Arnold, including signing over to Mr. Arnold a quit claim deed to the Defendant's house, FN7conducting discovery and fighting the charges would be inconsistent with the Defendant's attempts to make restitution to Mr. Arnold. Based on the state of things at the time he was retained, Mr. Brunvand testified, he and the Defendant decided that the best strategy would be to "not make waves," meaning conducting no discovery and not fighting the charges, but then filing a motion for downward departure. on the ground that the need for restitution outweighed the need for incarceration in this case. *See* Exhibit 2: Motion for Downward Departure. Mr. Brunvand testified that the Defendant consented to this. strategy and never expressed a desire to contest the charges against him. Finally, Mr. Brunvand stated that, apart from the confession, there was other evidence in place, including a co-defendant's potential testimony against the Defendant, that would have been sufficient to convict the Defendant.

> FN7 Mr. Brunvand testified that restitution payments were already being made to Mr. Arnold at the time he was retained to represent the Defendant. Mr. Brunvand also testified that, at the time he was retained, the Defendant was preparing to sign over his house to Mr. Arnold, and that Mr. Brunvand advised him against doing so. However, despite Mr. Brunvand's advice, the Defendant did sign over to Mr. Arnold a quit claim deed to his home. This testimony is supported by the record in this case. See Exhibit I: Departure Hearing/Sentencing Transcript, pp. 91-94.

Finally, the Defendant testified at the hearing. The Defendant testified that he did not recall being read his *Miranda* rights upon being taken into police custody in Mr. Arnold's office, nor did he recall any discussion regarding his right to have an attorney present. The Defendant also testified that he recalls signing a *Miranda* form and asked Detective Coleman at that time if an attorney should be present. According to the Defendant, Detective Coleman responded that Mr. Arnold was his "attorney" and that, if he pleased Mr. Arnold, he would not need an attorney. The Defendant further stated that, during questioning regarding his authorization to write checks or Mr. Arnold,

Mr. Arnold shook his head no before the Defendant could answer, causing the Defendant to tell Detective Coleman that he did not, have authorization to write checks for Mr. Arnold. The Defendant testified that, in fact, he had been authorized to write checks for Mr. Arnold while Mr. Arnold was out of town on business.

On cross-examination, the Defendant admitted that, although he signed an oath swearing hat the facts in his motion were true and correct, he actually did not sign that oath until after the motion was filed, and did not read the motion before signing the oath. The Defendant also admitted that, on November 30, 2001, FN8 he wrote a check to Mr. Arnold for $3700.00. The Defendant testified that he did so because Mr. Arnold told him to pay him whatever money he had. The Defendant also admitted that, on December 7, 2001, he signed  over his house to Mr. Arnold by way of a quit claim deed. However, the Defendant claimed that he did so only because Mr. Arnold asked him to do this, and he "was honoring all of Mr. Arnold's requests" at that time. Additionally, the Defendant conceded that he wrote Mr. Arnold a letter dated May 31, 2002, wherein the Defendant stated that the police questioning on the date in question was "clearly not an infringement on my rights." The Defendant also testified that, at the beginning of this case, his goal was to make restitution to Mr. Arnold, but he retained Mr. Brunvand in an attempt to find other strategies to fight the charges against him. The Defendant also stated that, although he told Mr. Brunvand that his confession was coerced, Mr. Brunvand never discussed filing a motion to suppress with him. The Defendant also stated that Mr. Brunvand never discussed the possibility of going to trial in this case, although he did concede that he was advised of his right to a trial and knew that he could go to trial rather than plead guilty if he wished to do so. Moreover, the Defendant testified that, although he indicated to the court during his plea colloquy that he had read the change of plea form and understood it, he did not actually read the form. The Defendant also stated that, although he was aware that his co-defendant could possibly testify against him, and also was not sure if he could win at trial, he would, have proceeded to trial rather than entering a guilty plea had he known that trial counsel could file a motion to suppress in this case.

> FN8 The record indicates that Mr. Brunvand entered a notice of appearance in this case on December 17, 2001. No evidence was presented at trial that conclusively demonstrates the date on  which Mr. Brunvand was actually retained to represent the Defendant.

## ANALYSIS

## Ground One

As stated above, the Defendant claims his plea was involuntary due to his trial counsel's ineffective assistance in failing to file a motion to suppress his police confession in this case. FN9 In order to successfully argue a claim of involuntary plea due to ineffective-assistance of counsel, a defendant must prove (1) his trial counsel's performance was deficient, and (2) there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial. Both the deficiency prong and the prejudice prong of this test are determined based on the totality of the circumstances. *See Grosvenor v. State,* 874 So. 2d 1176, 1181-82 (Fla. 2004). FN9

> FN9 The Defendant also attempted to argue at the evidentiary hearing that he was intoxicated at the time he was questioned by police. However; as this claim was not included in the Defendant's written motion(s), it will not be considered by the court at this time. In any event, this court notes that the testimony presented by other witnesses, including Detective Coleman, Mr. Arnold, and Ms. Hanna, refutes the Defendant's claim of intoxication.

In the instant case, the Defendant has failed to establish either prong of the *Grosvenor* test. First, based on the totality of the circumstances, this court finds that Mr. Brunvand was not deficient in failing to file a motion to suppress the Defendant's confession. Foremost, the court finds absolutely no viable ground for filing a motion to suppress based on the facts presented. Although the Defendant contends that he was not read *Miranda* rights, was denied an attorney although he equivocally requested one, and was coerced by Mr. Arnold during questioning, three other witnesses, at least one of whom is completely disinterested in this case, testified to the contrary. Specifically, Detective Coleman, Ms. Hanna, and Mr. Arnold all testified that the Defendant was read *Miranda* rights on at least two occasions, voluntarily waived those rights, never asked for an attorney, and was in no way coerced during questioning. When the court is called upon to make a factual determination and is presented with conflicting testimony, it is within its province to weigh the credibility of the witnesses to resolve the factual dispute. *Alston v. State,* 894 So. 2d 46, 54 (Fla. 2004); *Smith v. State,* 697 So. 2d 991 (Fla. 4th DCA 1997). After reviewing the testimony and weighing the credibility of these witnesses, this court finds that the Defendant was properly advised of his rights, knowingly and voluntarily waived those rights, and voluntarily confessed to these crimes. Moreover, while the Defendant contends that Mr. Arnold unlawfully acted as a State agent by delivering the Defendant to police, the hearing testimony clearly establishes that Mr. Arnold acted independently in bringing the Defendant to his office. Accordingly, there appears to have been no basis for filing a motion to suppress in his case, and counsel cannot be deemed ineffective for failing to file a motion for which

there is no viable basis. *See Ramos v. State*, 559 So. 2d 705 (Fla. 4th DCA 1990).

Moreover, this court finds that Mr. Brunvand's decision not to file a motion to suppress in this case was sound trial strategy and, therefore, not subject to collateral attack. First, Mr. Brunvand testified that he reviewed all discovery in this case and found no grounds for filing a motion to suppress the Defendant's confession. Second, Mr. Brunvand testified that, even without the police confession, he believed there was sufficient evidence to convict the Defendant if the case went to trial. Third, Mr. Brunvand testified that, at the time he was retained, the Defendant was already making restitution payments to Mr. Arnold and expressed a desire to continue doing so, including signing over his home to Mr. Arnold. Mr. Brunvand explained that, given the restitution already paid and the Defendant's desire to continue making restitution, filing pretrial motions or otherwise litigating the charges would be inconsistent with those actions, so that he felt the best strategy was to "not make waves" and then request a departure sentence from the court. Mr. Brunvand further testified that the Defendant consented to this strategy. *See Buford v. State*, 492 So. 2d 355, 359 (Fla. 1986).

Additionally, assuming, *arguendo*, that trial counsel, was deficient in failing to file a notion to suppress, the Defendant has failed to demonstrate a reasonable probability that, but for counsel's error, he would not have pled guilty and would have proceeded to trial. This is so because the evidence presented at the evidentiary hearing indicates that, even prior to retaining Mr. Brunvand in this case, the Defendant was making restitution payments to Mr. Arnold, effectively conceding his guilt to the charges against him. This indicates that the Defendant's strategy even prior to consulting with Mr. Brunvand was to admit his guilt, show remorse, and make restitution in the hope of receiving a lenient sentence. Additionally, the testimony establishes that the Defendant was well advised of the other evidence against him, including the possible testimony of his co-defendant, and the Defendant conceded at the hearing that this additional evidence was a "factor" he considered when entering his guilty plea. Given this, it seems unlikely to this court that the Defendant would have opted to proceed to trial in this case even if he had known that a motion to suppress could be filed in this case.

(Exhibit 26 at pp. 1-7).

The state trial court's denial of ground two is objectively reasonable, in light of ample evidence that trial counsel's failure to file a motion to suppress did not constitute deficient performance, and Woldseth suffered no prejudice. Thus, the state court decision is entitled

to deference pursuant to the provisions of 28 U.S.C. 2254(d) and (e).

Ground two does not warrant habeas corpus relief.

### GROUNDS THREE AND FOUR

### GROUND THREE

PETITIONER'S RIGHTS TO DUE PROCESS OF LAW GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS AND TO THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED BY TRIAL COUNSEL'S AFFIRMATIVE MISADVICE AS TO THE CONSEQUENCES OF THE PLEA OF GUILTY, RENDERING THE PLEA UNINTELLIGENTLY, UNKNOWINGLY, AND INVOLUNTARILY GIVEN.

### GROUND FOUR

PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION WAS VIOLATED BY TRIAL COUNSEL'S FAILURE TO ENTER PLEA NEGOTIATIONS WITH THE STATE ATTORNEY INSTEAD OF THE VICTIM'S ATTORNEY.

Woldseth raises two additional allegations of ineffective assistance of counsel. In Ground Three, he faults counsel for affirmatively misadvising Woldseth as to the consequences of the guilty plea, and in Ground Four he complains counsel was ineffective for failing to enter into plea negotiations with the State Attorney instead of the victim's attorney. On remand from the appellate court, the state postconviction court scheduled an evidentiary hearing to resolve these two claims. On the day of the scheduled hearing, June 23, 2008, the state trial court again denied Woldseth's requests for appointment of counsel or a continuance to retain private counsel, and Woldseth refused to go forward in the hearing by offering his own testimony or questioning the available witnesses. Grounds three and four are waived and procedurally barred as a result of Woldseth's election to forego evidentiary development of the grounds at the state evidentiary hearing. Woldseth's

refusal to testify, or to question the two available witnesses concerning crucial facts relevant to the postconviction claims, amounted to waiver or abandonment of those claims under Florida law, foreclosing appellate review of his claims. (See Exhibit 37.) *See Ferrell v. State*, 918  So. 2d 163, 173-174 (Fla. 2005) ("Ferrell's claim of ineffective assistance based on the failure of trial counsel to seek the expert assistance of a social worker is a fact-based issue that required development at an evidentiary hearing, as evidenced by postconviction counsel's proffer of testimony from the expert social workers. *See Owen v. State*, 773 So. 2d 510, 515 (Fla. 2000). However, Ferrell 'opted to forego' the presentation of such evidence at the scheduled evidentiary hearing and thus waived the claim. *Id.*").

In addition, Grounds Three and Four are unexhausted and procedurally barred because the denial of those grounds was not argued in the postconviction appeal. Woldseth did not attack the state trial court's denial of the grounds on the basis of waiver or failure of proof. Rather, Woldseth challenged the court's denial of appointment of postconviction counsel and/or denial of a continuance for Woldseth to retain his own attorney. The failure to brief issues concerning the denial of the two ineffective assistance of trial counsel claims resulted in a default of those claims. The Eleventh Circuit correctly stated that in Florida, in non-summary proceedings, briefs are required and failure to include and argue any preserved issue in the initial brief acts as a waiver. *See Atwater v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006)(citing *Shere v. State*, 742 So. 2d 215, 217 n.6 (Fla. 1999) (per curiam). *See also, Coolen v. State*, 696 So. 2d 738, 742 n.2 (Fla. 1997) (stating that a failure to fully brief and argue points on appeal "constitutes a waiver of these claims") (quoted in *Simmons v. State*, 934 So. 2d 1100, 1111 (Fla. 2006)). *See also, Hall v. State*, 823 So. 2d 757, 763 (Fla. 2002) ("[A]n issue not raised in an initial brief is deemed

abandoned and may not be raised for the first time in a reply brief.").

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003)("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364, 365 (1995)("Exhaustion of state remedies requires that the state prisoner fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.").

Claims that are procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986)(explaining a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo,* 513 U.S. 298, 327 (1995). In addition, " 'to be credible,' a claim of actual innocence

must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559

(quoting *Schlup,* 513 U.S. at 324). Woldseth cannot avoid the procedural bar because he

has neither argued nor shown the existence of cause and prejudice. Moreover, he does not

qualify for the fundamental miscarriage of justice exception because he has no new and

reliable evidence of actual innocence. *Schlup v. Delo*, 513 U.S. at 321-322.

Grounds three and four do not warrant habeas corpus relief.

Accordingly, the Court orders:

That Woldseth's petition is denied.  The Clerk is directed to enter judgment against

Woldseth and to close this case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of

the Rules Governing Section 2254 Cases in the United States District Courts because

Petitioner has failed to make a substantial showing of the denial of a constitutional right as

required by 28 U.S.C. § 2253(c)(2).

Because Petitioner is not entitled to a certificate of appealability, Petitioner is not

entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on June 6, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
James Riley Woldseth